IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| PHILIP S. DIVITA & ALFREDA C. RESINSKI, *as Co-Partners*<br><br>v.<br><br>TETRA TECH, INC. | CIVIL ACTION<br><br>NO. 19-2196 |
|---|---|

MEMORANDUM RE: ALL OUTSTANDING MOTIONS

**Baylson, J.** **February 2, 2022**

Plaintiffs are claiming damages under a tortious misrepresentation theory based on section 552 of the Restatement (Second) of Torts and the leading Pennsylvania case, Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866A 2d 220 (Pa. 2005). Defendants have moved for summary judgment and Plaintiffs have moved for partial summary judgment.

## I. Undisputed Background Facts

Plaintiffs Philip S. DiVita ("DiVita") and Alfreda F. Resinski (collectively, "Plaintiffs"), are the former co-owners of a mixed-use commercial property located at 141 Railroad Drive, Ivyland, Warwick Township, Bucks County, Pennsylvania (the "Property"). From the 1980s through the mid-2010s, the Property had been the base of operations of DaTech, Inc. ("DaTech"), an electronics manufacturing company founded by Mr. DiVita and his business partner, the late Lawrence Resinski.

The Property has a known history of groundwater contamination and is located within an area identified by the Pennsylvania Department of Environmental Protection ("PADEP") as the "Railroad Drive TCE Site." TCE (trichloroethylene) is a groundwater contaminant and known carcinogen found in certain solvents such as degreasers, which DaTech used during some years of its operations. PADEP has been investigating the presence, levels, and possible sources of

TCE contamination at the Railroad Drive TCE Site since at least 2014. PADEP has designated the Railroad Drive TCE Site as a "HSCA" site, which affords PADEP the funding and authority, pursuant to the Pennsylvania's Hazardous Substances Cleanup Act, to conduct clean-up efforts. On May 11, 2014, as part of these efforts, PADEP contracted with Defendant Tetra Tech, Inc. ("Tetra") to monitor and sample five groundwater wells within the Railroad Drive TCE Site and report to PADEP on the findings. In June 2016, Tetra Tech prepared a report for PADEP entitled Final Site Investigation Report, Railroad Drive TCE Site, June 2016 (the "Tetra Tech Report"), which included data collected from well sampling conducted at the Railroad Drive TCE site.

Plaintiffs listed the property for sale, as a result of which Trappler Enterprises, LLC ("Trappler") became the new owner. Trappler and/or its lender, Univest Bank, engaged the services of an environmental consultant, Patriot Environmental Services ("Patriot"), to provide an environmental assessment. According to the parties, Patriot identified the property as having a recognized environmental condition ("REC") due to certain contaminants on the property. Trappler terminated the agreement of sale based on concerns about the ground water continuation at the property.

Another agreement of sale was arrived at by the parties on March 24, 2018, subject to a condition that Plaintiffs enter into an agreement with PADEP. The sale was ultimately completed in December of 2018.

## II. Contentions of Parties

Plaintiffs claim that a report prepared by Tetra led to the postponement of the sale and set into motion a series of undertakings about environmental concerns, resulting in Plaintiffs suffering damages.

In Plaintiffs' Amended Complaint filed August 6, 2019, Plaintiffs allege a single count for negligence due to misrepresentation, alleging that the Tetra Report was "justifiably relied upon by the parties on the sale of the property."

Tetra has moved for a summary judgment as follows:

1. Tetra's Report was prepared for PADEP pursuant to a contract between PADEP and Tetra, which argues that Plaintiffs are not within the limited class that may pursue negligent misrepresentation claims pursuant Bilt-Rite.

2. Plaintiffs will be unable to prove that the Tetra Report led to the postponement of the property sale or that the buyer, Trappler, even relied on the Tetra Report.

Most of the underlying facts in this case are not in dispute and have been clearly stated in the Statements that each party has filed in connection with the pending motions.

Tetra cites, in support of its Motion, that Mr. Trappler testified that he had never seen or reviewed the Tetra Report prior to terminating the sale on October 31, 2017, and that he wanted assurances that because of the environmental concerns, Trappler would not be liable.

Although the Tetra Report was commissioned by PADEP, the latter supplied a copy of it to Patriot.

Tetra's basic legal position is that it was not a party to any of the transactions, and the fact that it merely prepared a report that was used by PADEP and its consultant does not allow liability under section 552 of the Restatement (Second) of Torts and the Bilt-Rite holding.

## III. Discussion

An important issue in this case is the fact, which Tetra does not dispute, that there was a "discrepancy" between its first report and a supplemental report. Tetra asserts that this discrepancy is a minor matter and could not have been the cause of any damage.

Plaintiffs dispute this conclusion and have presented certain exhibits in their Opposition to Tetra's Motion for Summary Judgment that the discrepancy is a major factor in this case, and that the Tetra Report was false.

There are facts in dispute as to the circumstances under which the Tetra Report became known to Trappler, and to what extent, if any, it was relied upon by Trappler.

Plaintiffs cite from excerpts in the contract between Tetra and PADEP that show that PADEP was using the Tetra materials in its public presentations concerning the property. Plaintiffs also cite testimony by Tetra representatives that PADEP shared Tetra Reports on other projects, and that Tetra had reason to know that the public and third parties who were receiving information from PADEP, would rely on the Tetra Report in making decisions concerning the environmental risk with properties that they own and/or are selling or buying.

Plaintiffs rely on the following facts/filings in their Opposition papers:

1. False information provided by Tetra.
2. Regulations by PADEP on what third parties can rely on.
3. Statement by the buyer's attorney, Van Blunk.
4. Email from Hudson Green dated October 30, 2017.
5. Expert Report by attorney Malcolm Burank.

Tetra has filed a Motion to Exclude the Expert Report of Mr. Burank on the grounds that it is overly general, and it does not "fit" the issues in this case. For purposes of the pending Summary Judgment Motions, the Court will deny this Motion, as the proposed testimony does add some relevant background on the real estate transactions with environmental concerns that are at issue in this case. However, this ruling is without prejudice to Tetra making any further motion concerning this expert testimony at trial, but the Court will likely withhold ruling until the trial gets under way to make any final decision concerning Mr. Burank's appearance as an expert.

Tetra relies on deposition testimony that it provided during discovery, also arguing that certain testimony proffered by Plaintiffs is hearsay and cannot be considered in Plaintiffs' Opposition to Tetra's Rule 56 Motion. The Court concludes otherwise. The credibility of witnesses is for the fact finder. There are material disputes about some testimony. Similarly, what is hearsay on summary judgment papers may turn out to be admissible at trial, perhaps proven by underlying documents or by contrary witnesses.

## IV. Legal Discussion

### a. Standard

Summary judgment should be granted if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a factual dispute "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. A grant of summary judgment is appropriate only if "the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In deciding a motion for summary judgment, courts must "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015). The moving party must identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's burden at the summary judgment stage can be met by showing the court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—that demonstrate the existence of a genuine triable dispute. Fed. R. Civ. P. 56(c).

**b. Application**

It is important to note that the Pennsylvania Supreme Court decision in Bilt-Rite was based on a demurrer to the complaint, equivalent to a motion to dismiss under Federal Rule 12, issued before any discovery took place. Thus, the Pennsylvania Supreme Court was ruling only on the allegations of the plaintiff in the complaint. In this case, to the contrary, there has been extensive discovery and summary judgment can only be granted if there is no genuine issue as to a material fact.

Although the Court agrees with the parties that the Pennsylvania Supreme Court's Bilt-Rite decision still reflects Pennsylvania law, there have been no decisions by that court, or by the Third Circuit, endorsing the arguments made by Tetra in this case.

Third Circuit jurisprudence requires district court judges to look carefully at the entire record presented on a Rule 56 motion and construing the record in a light most favorable to the non-moving party. If inferences can be drawn in the favor of a non-moving party, from disputed or even undisputed facts, then summary judgment cannot be granted.

There have been a few Pennsylvania Supreme Court cases on section 552 of the Restatement (Second) of Torts, principally dealing with the scope of the economic loss doctrine under Pennsylvania Law. In Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania, the Court held:

> We granted allowance of appeal to determine whether § 552 of the Restatement (Second) of Torts imposes liability for economic losses to a contractor caused when a gas utility company fails to mark or improperly marks the location of gas lines. . . . We find it apparent our legislature did not intend utility companies to be liable for economic harm caused by an inaccurate response under the Act, because it did not provide a private cause of action for economic losses. . . . There is simply no statutory basis to impose liability for economic losses here.

985 A.2d 840, 842–43 (Pa. 2009).

More recently, in Dittman v. UPMC, the Court reviewed its Bilt-Rite and Excavation decisions and held:

> Having set forth our decisions in Bilt-Rite and Excavation Technologies, we hold that those cases do not stand for the proposition that the economic loss doctrine, as applied in Pennsylvania, precludes all negligence claims seeking solely economic damages. Indeed, the Bilt-Rite Court unequivocally stated that 'Pennsylvania has long recognized that purely economic losses are recoverable in a variety of tort actions' and that 'a plaintiff is not barred from recovering economic losses simply because the action sounds in tort rather than contract law.' In so doing, the Court set forth a 'reasoned approach' to applying the economic loss doctrine that 'turns on the determination of the source of the duty plaintiff claims the defendant owed.' Specifically, if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action.

196 A.3d 1036, 1054 (Pa. 2018) (citations omitted).

There are a few instances where the Third Circuit has cited the Pennsylvania Supreme Court's decision in Bilt-Rite, basically limiting the scope of Bilt-Rite in several different contexts. In Sovereign Bank v. BJ's Wholesale Club, Inc., the Third Circuit stated:

> "[W]e have already explained that Bilt–Rite did not hold that the economic loss doctrine may not apply where the plaintiff has no available contract remedy. As explained in Sovereign's appeal, the Bilt–Rite Court simply carved-out an exception to allow a commercial plaintiff to seek recourse from an 'expert supplier of information' with whom the plaintiff has no contractual relationship, in very narrow circumstances not relevant here. The Pennsylvania Supreme Court emphasized that its holding was limited to those 'businesses' which provide services and/or information that they know will be relied upon by third parties in their business endeavors."

533 F.3d 162, 180 (3d Cir. 2008) (citations omitted)

The Third Circuit has cited the excerpted language from Sovereign on a couple more recent occasions: in Azur v. Chase Bank, USA, National Association, 601 F.3d 212, 223 (3d Cir. 2010), and in Longenecker-Wells v. Benecard Services Inc, 658 F. App'x 659, 662 (3d Cir. 2016) (non-precedential). However, because those cases just repeated what Sovereign had to say and did not add any additional commentary or interpretation, they are not relevant on these cases.

The Third Circuit again discussed Bilt-Rite in Precision Pipeline, LLC v. Trico Surveying & Mapping, Inc.:

> "In Bilt-Rite, the Pennsylvania Supreme Court held that a design professional (there, an architect) may, 'in the absence of privity of contract[,] ... be sued by a general contractor ... for economic loss foreseeably resulting from breach of an architect's common law duty of due care in the performance of his contract with the owner.' Thus, the design professional's liability to the contractor arises from the design professional's breach of its contract with the owner. Even Precision's authorities support this logical limit to Bilt-Rite's narrowly tailored liability theory. Moreover, Precision cites no Pennsylvania case endorsing its expansive view of Bilt-Rite, under which design professionals who sign a contract with a property owner would thereby assume duties of unknown scope owed to third-party contractors."

712 F. App'x 144, 147 (3d Cir. 2017) (non-precedential)

In sum, recent cases handled by the Pennsylvania Supreme Court or the Third Circuit have cautioned against any extension of the Bilt-Rite doctrine but have not limited it either. Most of these cases largely turn on interpretation of the economic loss doctrine and are not precedence for the facts of this case.

## VI. Conclusions

In review of the factual disputes and the absence of any precedential holding, the Court must deny both Rule 56 Motions and require the parties to develop a trial record.

O:\CIVIL 19\19-2196 DiVita v Tetra Tech, Inc\19cv2196 Draft Memo.docx